## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03068-MSK-NYW

MORGAN DUNN,

      Plaintiff,

v.

JANE MICELI, M.D., and
EATING RECOVERY CENTER, L.L.C.,

Defendants.

---

## ORDER ON PENDING MOTIONS
---

Magistrate Judge Nina Y. Wang

      This matter is before the court on a number of pending motions:

(1) Defendant Jane Miceli, M.D.'s Motion for Extension of Time to Designate Nonparties at Fault ("Motion for Extension") [#13, filed February 11, 2015];

(2) Plaintiff Morgan Dunn's Motion to Strike Designation of Nonparty ("Motion to Strike") [#15, filed February 12, 2015];

(3) Defendant Miceli's Motion to Compel the Identification of Reviewing Expert ("Motion to Compel") [#27, filed March 9, 2015]; and

(4) Motion to Disqualify Plaintiff's Counsel ("Motion to Disqualify") [#28, filed March 9, 2015].

      These matters were referred to this Magistrate Judge pursuant to the Order Referring Case dated March 9, 2015 [#29] and memoranda dated March 9, 2015 [#30, #31, #32, and #33, respectively]. This court has carefully considered the Motions and related briefing, the entire

case file, the comments offered at the April 14, 2015 Motions Hearing, and the applicable case

law. For the following reasons, the Motion for Extension is DENIED, the Motion to Strike is

DENIED, the Motion to Compel is DENIED, and the Motion to Disqualify is GRANTED.

## BACKGROUND

Plaintiff Morgan Dunn ("Plaintiff" or "Ms. Dunn") filed a Complaint in this court on

November 13, 2014, asserting one claim for medical negligence as to Defendant Miceli and one

claim for violation of the Colorado Consumer Protection Act as to Defendant Eating Recovery

Center, L.L.C. ("ERC") [#1]. Plaintiff was admitted to ERC in October 2012 to the care of

Defendant Miceli as the Medical Director of Adult Inpatient and Residential Services. [#1 at ¶

14]. Upon admission, Dr. Miceli diagnosed Plaintiff with Anorexia Nervosa, Bulimia,

depression, Obsessive Compulsive Disorder, Generalized Anxiety Disorder, and Post-Traumatic

Stress Disorder. [*Id.* at ¶ 15]. Plaintiff alleges that Dr. Miceli was negligent and deviated from

the applicable standard of care in treating her for these conditions, as well as implementing a

treatment program through which she developed a dependency on addictive medications. [*Id.* at

¶¶ 16-25, 35-38]. Plaintiff further alleges that ERC knowingly made false promises and

representations regarding the services it provides to patients, including the type of treatment and

post-discharge plan it provided for Plaintiff. [*Id.* at ¶¶ 40-48]. Ms. Dunn seeks damages

described as "past and future medical and health care bills, economic damages, mental anguish,

emotional distress, pain and suffering and other similar injuries and damages." [#1 at ¶¶ 39, 48].

## I.      Procedural History

In filing her Complaint, Ms. Dunn invoked diversity as her jurisdictional basis. [#1 at ¶

5]. This case was assigned to Magistrate Judge Boland pursuant to the Pilot Program to

Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges [#7], and he set

a Scheduling Conference to be held March 4, 2015. Defendant Miceli filed an Answer to the Complaint on January 6, 2015. [#10]. On February 10, 2015, this action was reassigned to the undersigned Magistrate Judge. [#12].

On February 11, 2015, Defendant Miceli filed her Designation of Nonparties at Fault, designating Hanford Dunn, Plaintiff's older brother, Martha Dunn, Plaintiff's mother, and Steven Dunn, Plaintiff's father and counsel of record in this action. [#14]. Dr. Miceli filed the Motion for Extension the same day asking for leave to designate additional nonparties at fault up to and including 30 days after the deposition of Plaintiff. [#13].

On February 12, 2015, Plaintiff filed the Motion to Strike arguing that Defendant Miceli did not allege sufficient facts to support her designation, did not state a *prima facie* case of negligence, and Plaintiff can assess no liability against the persons designated. [#15]. Pursuant to Defendant Miceli's Unopposed Motion to Continue, this court reset the Scheduling Conference for March 16, 2015. [20]. Defendant Miceli filed a Response to the Motion to Strike on February 27, 2015. [#21].

The parties declined to consent to the jurisdiction of a magistrate judge and this case was reassigned to Chief Judge Krieger on March 6, 2015. [#24, #25]. ERC filed an Answer to the Complaint the same day. [#26].

On March 9, 2015, Defendant Miceli filed the Motion to Compel, asking the court to order Plaintiff to identify the physician and/or other medical professionals her counsel consulted to review the medical negligence claim and for preparation of the certificate of review attached to the Complaint. [#27]. Defendant Miceli also asks that the medical professionals who reviewed the claim provide an affidavit to the court. *Id.* The same day, Defendant Miceli filed the Motion to Disqualify, requesting that the court disqualify Plaintiff's counsel and father,

Steven Dunn, from representing her in this matter on the basis that he is a necessary witness to Plaintiff's claims.  [#28].

On March 10, 2015, in light of the Motion to Disqualify related to Mr. Dunn's representation of his daughter in this matter, this court vacated the March 16, 2015 Scheduling Conference and set a Motions Hearing on the pending Motions for April 14, 2015.  [#38]. Plaintiff filed a Reply in support of her Motion to Strike on March 11, 2015.  [#43].  She filed a Response to the Motion to Disqualify on April 1, 2015.  [#44].  Defendant Miceli filed a Reply in support of her Motion to Compel on April 6, 2015 [46], and a Reply in support of her Motion to Disqualify on April 9, 2015.  [#47].  The Motions Hearing was held April 14, 2015, at which the undersigned took the pending Motions under advisement.  [#49].

## ANALYSIS

## I.     Designation of Nonparties at Fault

In her First Claim of Relief, Ms. Dunn alleges that Defendant Miceli deviated from the standard of care required and was negligent in her care and treatment of her.  [#1 at 9-10]. Specifically, Plaintiff claims that Defendant Miceli was negligent in her treatment of Plaintiff's numerous disorders, including failing "to properly coordinate with Plaintiff's treating physicians and counselors in Dallas to insure that her medications were being given properly and appropriately."  [#1 at ¶ 38].  Plaintiff claims the negligence caused her mental anguish, emotional distress, pain and suffering, and she now seeks damages for those injuries.

A claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages.  *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 80 (Colo. 2001).  Section 13-21-111.5(3)(b) of the Colorado Revised Statutes allows Defendants to designate as a nonparty at fault an individual who is wholly or partially at fault for

the alleged negligence. Colo. Rev. Stat. § 13-21-111.5. This provision "ensures that a party that is found liable will not be responsible for more than its fair share of the damages." *Stone v. Satriana*, 41 P.3d 705, 708-09 (Colo. 2002). Nevertheless, courts construe non-party designation requirements strictly to avoid a defendant attributing liability to a non-party from whom the plaintiff cannot recover. *Id.* (citing *Miller v. Byrne,* 916 P.2d 566, 577 (Colo. App. 1995) (ruling non-party designation appropriately stricken because it did not satisfy the element of "duty" in the liability equation, when the General Assembly intended non-party designations to be only for individuals or entities that could be found legally liable.) Defendant Miceli is not required to prove the negligence of Plaintiff's family members in her designation, but the basis for designation "must go beyond bald allegation." *Redden*, 38 P.3d at 81 (citing *Sandoval v. Archdiocese of Denver,* 8 P.3d 598, 606 (Colo. App. 2000) (noting designating party had no need to produce evidence of the claim, only sufficient support for its belief of non-party negligence)). A court properly disallows a designation when it finds that defendant has not established legal culpability as to the alleged nonparty. *Id.* In sum, Defendant must allege in her designation that the nonparties' acts or omissions would satisfy all elements of a negligence claim. *Id.*

Defendant Miceli's Designation of Nonparties at Fault ("the Designation") [#14] identifies Hanford Dunn, Plaintiff's brother, as a non-party at fault based on his alleged abuse Ms. Dunn in childhood. [*Id.* at 1]. The Designation further states that Hanford Dunn therefore caused or contributed to Plaintiff's medical conditions and is liable for a portion or all of Plaintiff's claimed injuries and damages. [*Id.*]. The Designation further identifies Plaintiff's parents, Martha and Steven Dunn, as additional non-parties at fault based on their alleged failure to prevent their son's abuse of Plaintiff, and asserts that their negligence must be considered in assessing liability for damages. [*Id.* at 2-3].

Within the context of a negligence claim, a duty of care arises "when there is a foreseeable risk of injury to others from a person's failure to take protective action to prevent the injury." *Miller v. Byrne*, 916 P.2d 566, 578 (Colo. App. 1995) *citing Connes v. Molalla Transport Sys., Inc.,* 831 P.2d 1316 (Colo. 1992). *See also Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1216 (10th Cir. 2001) (recognizing that a parent owes his or her child a duty of care by nature of the special relationship shared between the two). An intentional tort, though broader than negligence, similarly implies legal responsibility for the purposes of the designation statute. *See Redden*, 38 P.3d at 80 (citation omitted).

### A.    Plaintiff's Motion to Strike

Ms. Dunn moves to strike Defendant Miceli's Designation, arguing the Designation is deficient (1) for lack of sufficient facts; (2) for failure to set forth a *prima facie* case of negligence; and (3) because Plaintiff cannot assess liability against the individuals named in the Designation. [#15 at 2]. At the core of Plaintiff's argument is her contention that non-party designations are reserved for individuals or entities who might themselves be liable for the alleged negligence, and "the nonparties were not responsible for attempting to titrate Plaintiff off of these dangerous dosages of prescription drugs before she was discharged from ERC." [*Id.* at 3-5].

However, "the acts on the part of a designated nonparty which have contributed to a plaintiff's injury are not required to have been the *same* tortious acts as those of a defendant."[1] *Moody v. A.G. Edwards & Sons, Inc.*, 847 P.2d 215, 217 (Colo. App. 1992). *See also Redden*, 38 P.3d at 81 n. 2 (recognizing that Colorado case law does not absolve tortfeasors of liability when the plaintiff's injuries result from medical treatment reasonably sought and directly related to the

---

[1] This rule excepts § 13–21–111.5(4), which applies to two or more persons who "consciously conspire and deliberately pursue a common plan or design to commit a tortious act."

actions of the original tortfeasor) (citation omitted).  Put another way, as applied to this case, Ms. Dunn's claimed injuries of "mental anguish, emotional distress, pain and suffering" [#1 at ¶¶ 39, 48] may be the result of separate torts, one purportedly committed by Defendant Miceli, and others committed by the named nonparty designees.  *See Moody*, 847 P.2d at 217.

In the Designation, Defendant Miceli asserts that the conduct of Martha and Steven Dunn "caused or contributed to Plaintiff's current mental and medical conditions through acts including, but not limited to, failure to prevent or stop Plaintiff's brother from sexually abusing her in childhood, failure to monitor and supervise the Plaintiff after her release from ERC, and infliction of mental and emotional trauma on the Plaintiff."  [#14 at 1-3 (emphasis added)].  At the Motions Hearing, Mr. Dunn conceded that he and Martha Dunn were involved in Plaintiff's treatment plan prior to her admittance to ERC and were given instructions regarding Plaintiff's care after her discharge from ERC.  Defendant Miceli argues that Steven and Martha Dunn "could be the subject of viable claims for their actions and inactions since Plaintiff's discharge from the ERC, for which the statute of limitations has not yet expired."  [#21 at ¶12]. Specifically, Defendant Miceli argues that Martha and Steven Dunn owed a duty of care to their daughter, and their failure to monitor, supervise, and properly care for Plaintiff after her release from ERC would result in injury.  [#22 at ¶ 18].  In *Doering*, the Tenth Circuit held that a parent could be designated as a nonparty at fault under Colo. Rev. Stat. § 13-21-115 because the parent's duty of care arose either as a result of the special relationship between a parent and child or as a result of the foreseeable risk of injury from the parent's failure to take protective action to prevent her children's injuries.  *Id.*  At this juncture of the case, Defendant Miceli need not prove negligence in the submitted Designation.  *Redden*, 38 P.3d at 81. Therefore, I find that both

Martha and Steven Dunn are properly designated as nonparties at fault and Defendant Miceli's Designation has sufficiently identified the basis of the potential liability.

Defendant Miceli does not allege that Plaintiff's brother has played any role in her medical treatment.  Rather, Defendant Micheli alleges that Hanford Dunn caused or contributed to Plaintiff's condition by sexually abusing her during her childhood.  [#14 at 1-2].  Defendant Miceli further alleges that Martha and Steven Dunn caused or contributed to Ms. Dunn's current mental and medical conditions through failure to prevent or stop the childhood abuse.  [*Id.* at 2-3].  While liability cannot be prorated among nonparties whose conduct merely created a pre-existing condition, *Fried v. Leong*, 946 P.2d 487, 490 (1997), the court interprets the Designation to allege that each of the Dunns' respective actions, including those of Hanford Dunn, directly caused or contributed to Ms. Dunn's current mental and medical conditions, rather than just a pre-existing condition.  Therefore, I find that the Designation also appropriately includes Hanford Dunn.  In reaching these conclusions, the court does not find that evidence related to Defendant Micheli's claims will necessarily be admissible at trial, *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo. 1997) (holding where a defendant designates a nonparty at fault and presents no evidence of liability, the court should not submit that claim to the jury), but rather that there is an inadequate basis for striking them now.

Accordingly, I deny Plaintiff's Motion to Strike.

**B.     Motion to Extend Time to Designate**

Defendant Miceli anticipates designating other nonparties at fault once she has engaged in the discovery process and asks the court for leave to file those designations within 30 days after taking Plaintiff's deposition.  Section 13-21-111.5(3)(b) requires a defending party to designate nonparties at fault within "ninety days of the commencement of the action unless the

court determines that a longer period is necessary."  A trial court's decision to extend the ninety-day filing period is reviewed under an abuse of discretion standard.  *Redden*, 38 P.3d at 84 ("Trial courts have the responsibility of managing their dockets, moving cases toward completion, and assuring that parties comply with deadlines.").  Defendant does not seek leave to file a designation out of time, rather she asks the court to accommodate a designation she anticipates filing in the future, after her counsel deposes Plaintiff.  I find that Defendant Miceli has not stated good cause at this time for the court to anticipatorily extend the statutory deadline. Defendant may file a motion to designate nonparties at fault out of time if she in fact requires that relief as discovery progresses, and the court will consider specific requests for designation, in light of the applicable standard, once the issue is ripe.

## II.    Motion to Compel

Defendant Miceli asks the court to compel Plaintiff to identify the experts who reviewed the medical negligence claim for purposes of C.R.S. § 13-20-602, and to provide the court with affidavits from these physicians. [#27].  Plaintiff argues the certificate of review attached to the Complaint complies with the language of the statute and states that the professional has expertise in the area of eating disorders. [#45].

Section 13-20-602 of the Colorado Revised Statutes requires that in every action for damages or indemnity based upon the alleged professional negligence of a licensed professional, the plaintiff's attorney shall file with the court a certificate of review declaring that he or she has consulted a person who has expertise in the area of the alleged negligent conduct, and that the person with expertise has "reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim,

counterclaim, or cross claim does not lack substantial justification..." Colo. Rev. Stat. § 13-20-602(1)(a), (3)(a)(I)-(II). This certificate of review statute is substantive law and applies to professional negligence actions brought in this District under diversity jurisdiction. *Martinez v. Garcia*, 59 F. Supp. 2d 1097 (D. Colo. 1999). The court, in its discretion, may require the identity of the licensed professional to be disclosed to the court and may "verify the content of such certificate of review." *Id.* at § 13-20-602(3)(b). However, the identity of the professional need not be disclosed to the opposing party or parties to the civil action. *Id.*

Defendant Miceli argues that Plaintiff's certificate merely mirrors the statutory language. [#27 at ¶ 9]. She further argues that the negligence claim implicates her training in psychiatry, internal medicine, psychology, nursing, and dietetic care and therefore would require the review of a "sufficiently qualified psychiatrist with experience treating eating disorders," and the certificate is unclear as to what kinds of "licensed professionals" were consulted. [*Id.*] Finally, she argues that Plaintiff's counsel would have had to consult with an internal medicine physician and medical professionals in the fields of psychology, nursing, and dietetic care as to ERC. [*Id.*]

To fulfill the requirements of § 13–20–602(3), the plaintiff's attorney must declare the following: "(1) he or she has consulted an expert; (2) the expert has reviewed the relevant information and has concluded that the plaintiff's claim does not lack substantial justification; and (3) the expert is competent and qualified to opine as to the negligent conduct alleged." *See RMB Services, Inc. v. Truhlar*, 151 P.3d 673 (Colo. App. 2006). Plaintiff's certificate of review, though short as to length and detail, includes each of these components and states that the licensed professionals with whom counsel consulted hold expertise in the area of eating disorders. [*See* #1 at 14]. *Cf. Redden*, 38 P.3d at 82 (holding trial court properly sought to verify content of certification of review when claimant failed to declare the competency of the expert

10

consulted).  Additionally, the medical negligence claim is brought as to Defendant Miceli alone, and thus a single certificate does not pose an issue here.  *Cf. State v. Nieto*, 993 P.2d 493, 504 (Colo. 2000) (the purpose of requiring a separate certificate of review for each licensed professional is to prevent plaintiffs from adding frivolous claims against multiple professionals.)

The law is clear that this court has the authority to order Plaintiff to verify the contents of the certificate of review, if deemed necessary.  I am not persuaded that at this time such verification should be required, and therefore, I deny the Motion to Compel.

## III.     Motion to Disqualify

Defendant Miceli seeks the disqualification of Mr. Dunn, who is Plaintiff's father, as Plaintiff's counsel on the basis that he cannot act as both advocate and witness in this lawsuit. [#28].  Plaintiff argues that this Motion is speculative and premature, and that Mr. Dunn should not be disqualified from acting as counsel for her.  [#44].

Whether to disqualify counsel rests within the sound discretion of the trial court.  *Federal Deposit Ins. Corp. v. Isham*, 782 F. Supp. 524, 528 (D. Colo. 1992).  In this case, Defendants have the burden of establishing the grounds for disqualification.  *Federal Deposit Ins. Corp. v. Sierra Resources, Inc.,* 682 F.Supp. 1167, 1170 (D. Colo. 1987).  I must make specific findings and conclusions in ruling on this Motion.  *Fullmer v. Harper,* 517 F.2d 20, 21-22 (10th Cir. 1975).[2] This District applies the Rules of Professional Conduct, as adopted by the Colorado Supreme Court, to the question of disqualification presented here.  *World Youth Day, Inc. v.*

---

[2] However, I use these findings in resolving this Motion only, and the parties are not bound by these factual findings for any other purpose in the course of this litigation. *Religious Technology Center v. F.A.C.T. Net, Inc.,* 945 F. Supp. 1470, 1473 (D. Colo. 1996).

*Famous Artists Merchandising Exch., Inc.*, 866 F. Supp. 1297, 1301 (D. Colo. 1994) (citing

D.C.COLO.LR. 83.6).[3]

Colorado Rule of Professional Conduct 1.7(a)(2) states in relevant part that a lawyer shall

not represent a client "if there is a significant risk that the representation of one or more clients

will be materially limited by the lawyer's responsibilities to … a third person or by a personal

interest of the lawyer."

Colorado Rule of Professional Conduct 3.7(a) states in relevant part:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a
necessary witness unless:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the
case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

As examined by Judge Babcock in *World Youth Day, Inc.*, the applicable test for determining

whether an attorney is "likely to be a necessary witness" is whether the anticipated testimony is

"relevant, material and unobtainable elsewhere."  *Id.* at 1301-02 (citing *CBA Ethics Committee*

*Opinion, Formal Opinion No. 78: Disqualification of the Advocate/Witness,* 23 The Colorado

Lawyer 2087 (September 1994)).  The Colorado Supreme Court has advised the trial court to

consider "the nature of the case, with emphasis on the subject of the lawyer's testimony, the

weight the testimony might have in resolving disputed issues, and the availability of other

witnesses or documentary evidence which might independently establish the relevant issues."

*Fognani v. Young*, 115 P.3d 1268, 1274 (Colo. 2005) (citation omitted).

I will consider the application of these Rules to the relevant facts of this case, beginning

with Mr. Dunn's alleged involvement with the underlying facts.  The Complaint avers that

Defendant Miceli made no notation of drug dependency issues when Plaintiff was admitted to

---

[3] D.C.COLO.LR. 83.6 is superseded by D.C.COLO.LAttyR 2(a).

ERC, and that her "prescription drug regiment for Plaintiff became inconsistent, was contradicted on several occasions by later orders and resulted in Plaintiff becoming dependent on narcotic prescription drugs." [#1 at ¶¶ 15, 17]. Since 2011, Plaintiff has been treated at or admitted to at least eight facilities, including hospitals, inpatient facilities, and outpatient programs. [#28-1]. Mr. Dunn is an active participant in seeking treatment for his daughter and has been involved in the treatment strategies for Plaintiff since her initial hospitalization in March 2011. [*Id.* ("both Morgan's mother and I participated in weekly sessions and updates with the staff at Timberline Knolls and had weekly communications with my health care insurance provider regarding Morgan's on-going care"; [Mrs. Dunn] and I met Morgan's counselors [ ] to discuss, plan, and implement a higher level of care regiment for her")]. He personally transported Plaintiff to the emergency room on multiple occasions and accompanied her when she was admitted to at least two facilities outside of the Dunns' home state of Texas. [*Id.*] When Plaintiff left ERC she was discharged to her parents' care.

Mr. Dunn argues that his testimony regarding Plaintiff's health and treatment prior to being admitted to ERC and following her discharge is not necessary because Martha Dunn can provide equivalent evidence. I respectfully disagree. Mr. Dunn's presence throughout the timeline of events, the level of his involvement through his daughter's care, and his designation as a nonparty at fault leaves me with little doubt that his testimony is material and non-cumulative.

There are many rationales behind the rule preventing a lawyer from acting as both an advocate and a necessary witness. Combining the roles can (1) place the attorney in the unseemly and ineffective position of arguing his or her own credibility; and (2) prejudice the opposing party by confusing the factfinder as to whether a statement by the advocate-witness

should be heard as proof or as an analysis of the proof. *See Colorado Rules of Professional Conduct,* R. 3.7. Most of all, "a lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both cases." *Fognani*, 115 P.3d at 1272 (citation omitted).

Mr. Dunn and Martha Dunn may have participated equally in planning Plaintiff's treatment, but even if they were each a party to every conference, telephone call, written correspondence, and hospital visit (which Defendants dispute), they are individuals with independent processes of thought capable of making distinct observations. Mr. Dunn's position improperly presumes that his testimony would mirror that of Martha Dunn. *See Miller v. Colorado Farms*, Civ. No. 97-cv-02015-WFD-OES, 2011 WL 629463, at *4 (D. Colo. 2001) (J. Schlatter). Even if the presumption is borne out to be true, Defendants are not required at this stage of the proceedings to merely accept Mr. Dunn's pronouncement. *Id.* I simply cannot find that Mr. Dunn's testimony would necessarily be cumulative of Martha Dunn's.

Furthermore, counsel for Defendant Miceli represented on the record at the April 14, 2014 Hearing that she views Mr. Dunn as a material fact witness would seek to depose him. Indeed, Defendants are entitled to not only seek discovery based on their theories of the case involving Mr. Dunn, but also to test Mr. Dunn's credibility as a witness both at deposition, and then perhaps ultimately at trial. *See Miller*, 2001 WL 629463 at *4. Given these set of circumstances, I find that Mr. Dunn has an existing and tangible conflict of interest in the representation of his daughter.

In other cases, a court has permitted counsel to go forward in a pretrial capacity even after disqualification as trial counsel. *See Merrill Lynch Bus. Finan. Servs. v. Nudell*, 239 F. Supp. 2d 1170, 1174 (D. Colo. 2003). However, I find that the conflict of interest is so pervasive as to require the disqualification of Mr. Dunn for pretrial proceedings as well. *See World Youth*

14

*Day,* 866 F. Supp. at 1303 (disqualification from pretrial matters may be appropriate where that activity "includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role."). *See also Fognani,* 115 P.3d at 1270 (the trial court retains discretion to determine whether the advocate-witness's "participation in pretrial litigation activity would become known to the jury and would thus undermine the purpose of the rule."). Counsel argues that even if he must ultimately serve as a fact witness, disqualification is premature at this time. But given the sensitive nature of this case and the charged allegations flowing between Plaintiff and Defendant Miceli about the cause of her alleged injuries, I reluctantly conclude that Mr. Dunn's effectiveness as Plaintiff's advocate is irreparably diminished as a result of his personal investment in the resolution of this lawsuit, as evidenced not merely by the parent-child relationship but through his role in procuring effective treatment for Plaintiff over the past four years. Moreover, the allegations of negligence arising from post-treatment care and Plaintiff's parents' alleged failure to protect her from her abusive brother necessarily implicate Mr. Dunn. His individual interests including any obligations to his family are inextricably intertwined, and may even be at odds, with those of his client's. Finally, with compassion for an individual struggling to conquer a life-threatening mental illness, Plaintiff's purported inability to retain alternative counsel on the basis of her overwhelmingly poor health simply adds to this court's concern that she may not be capable at this time of asserting her interests as she perceives them over her interests as seen and articulated by her father.[4]

Plaintiff relies on *Grider v. City and County of Denver*, No. 10-cv-007220-MSK-MJW, 2011 WL 721279 (D. Colo. February 23, 2011) to support that disqualification is premature at this stage. I respectfully find that *Grider* is distinguishable. Unlike in *Grider*, the pleadings here

---

[4] Indeed, there is no evidence on the record, and no representation by Mr. Dunn himself, that he is not still thoroughly involved with Plaintiff's care.

do not appear to require clarification and refinement, only two claims are presented and additional time is not necessary to divine what issues will be contested at trial, and Counsel's knowledge of facts relevant to the claims is not disputed.

Plaintiff argues that her lack of employment, severe illness, and lack of financial resources will prevent her from obtaining other representation [#15].    While I am certainly sensitive to Plaintiff's concerns, I am not persuaded that the hardship Plaintiff may endure in replacing her attorney is so significant as to trump the other considerations supporting disqualification.  In determining whether disqualification would impose a substantial hardship on the client, I consider "all relevant factors in light of the specific facts before the court, including the nature of the case, financial hardship, giving weight to the stage in the proceedings, and the time at which the attorney became aware of the likelihood of his testimony." *Fognani*, 115 P.3d at 1275.

The Complaint was filed in November 2014 and a scheduling order has not yet been issued in this matter.  The Parties have not entered the discovery phase and no deadlines are pending.  There is ample time for a new attorney to learn the facts of this case and develop strategy.   To allow Mr. Dunn to go forward now risks permitting "attorneys to remain mute when aware of the likelihood of their testimony, 'all the while hoping that his adversary will not recognize the problem until the case is well under way.'"  *Id.* (quoting *Greenebaum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.,* 421 F. Supp. 1348, 1352 (D. Colo. 1976)).  Indeed, a comment to Rule 3.7 notes as a relevant factor whether the party could reasonably foresee that the lawyer would likely be a witness.  *See Colorado Rules of Professional Conduct,* R. 3.7, cmt. 4.  Therefore, I conclude that disqualification of Mr. Dunn from any representation in this matter is appropriate and necessary.

Accordingly,

IT IS ORDERED:

(1) The Motion to Strike [#15] is **DENIED**;

(2) The Motion for Extension [#13] is **DENIED** with leave to file motion(s) for leave to designate nonparties out of time if and when Defendant Miceli has identified additional nonparties at fault;

(3) The Motion to Compel [#27] is **DENIED**; and

(4) The Motion to Disqualify [#28] is **GRANTED**, Mr. Dunn shall not participate in any pretrial activity that could be admissible at trial; Plaintiff shall notify the court whether she intends to retain other counsel or proceed *pro se* no later than the Scheduling Conference to be set by separate order.


DATED:  April 22, 2015                    BY THE COURT:


                                          s/Nina Y. Wang_____
                                          United States Magistrate Judge